AUTOMATED SYSTEMS AND
PROGRAMMING, INC.
Plaintiff

v.

Thomas R. CROSS Defendant

No. PJM 01–1531.

United States District Court,
D. Maryland.

Nov. 9, 2001.

Albert D. Brault, Brault, Graham, Scott & Brault, James M. Brault, Law Office, Rockville, MD, for Plaintiff.

Stephen R. Leventhal, Law Office, Bethesda, MD, for Defendant.

Thomas R. Cross, Frederick, MD, for Defendant.

*OPINION*

MESSITTE, District Judge.

I.

Automated Systems and Programming, Inc. (ASPI) sues Thomas R. Cross (Cross) in five counts: fraud (Counts I and II), indemnity (Count III), subrogation (Court IV), and restitution/unjust enrichment (Count V).[1] Cross has moved to dismiss the action on the ground of statute of limitations.

The Court will DENY the Motion to Dismiss but, for reasons stated hereinafter, will indefinitely STAY these proceedings.

---

**1.** The case, originally filed in the Circuit Court for Montgomery County, was removed to this Court by Cross. Although both ASPI and Cross are Maryland residents, the case is here as a proceeding related to ASPI's filing of a voluntary petition under Chapter 11 of the Bankruptcy Code. 28 U.S.C. § 1334.

## II.

ASPI, a technology firm, was certified to bid on government contracts as a minority-owned business. In January 1992, it engaged Thomas R. Cross, who had extensive experience in bidding on competitive government contracts, to work for it on a part-time basis. Cross's engagement letter provided that he would receive an annual salary of $75,000, plus the right to participate in ASPI's executive compensation plan, which would provide him with a sales commission of 3% on all revenue generated solely by him. Additionally, he was promised 30% of the profit on any contracts for which he had direct management control. The engagement letter was signed by the parties and, by September 1993, Cross had become ASPI's full-time employee.

In 1994, at Cross's instance, ASPI teamed up with Washington Data Systems (WDS) to bid on a five-year computer hardware and maintenance contract that the Internal Revenue Service (IRS) had set aside for minority owned firms. In arriving at the teaming arrangement, ASPI determined that David Slosman, WDS's project manager, would be essential to a successful bid on the IRS contract and therefore extended him an offer of employment, contingent on ASPI receiving the contract.

During bid preparations, Cross learned that Slosman had received an offer to return to WDS after a year of teaming with ASPI and therefore recommended that ASPI offer Slosman a percentage of the profits that ASPI might realize from the IRS contract in order to induce him to stay on longer with ASPI. Cross agreed to reduce his own share of the profits to 25% to help secure Slosman's employment and Slosman was offered a like 25% share. Cross, however, omitted to tell Slosman that he (Cross) had a right to, or intended to, claim an additional 3% commission on the contract pursuant to his engagement letter with ASPI, which would have the effect of reducing Slosman's 25% share. Moreover, when Cross and Slosman undertook to prepare estimates of the profitability of the IRS contract for ASPI, Cross again failed to include his 3% commission as a cost. ASPI thus submitted its bid to the IRS without an appropriate mark-up for Cross's commission, with obvious implications for ASPI's profit margin.

ASPI eventually won the IRS contract, following which Slosman entered into an employment agreement with ASPI,[2] and work on the contract got under way. When ASPI learned, however, that Cross, having failed to include the item as a cost in his profit projections, was claiming a 3% commission on the total revenue of the contract, ASPI ceased all commission and bonus payments to him and on April 15, 1997, terminated his employment.[3]

In June 1997, Cross filed suit against ASPI in the Circuit Court for Montgomery County, seeking the 3% commission and a 30% share of the profits on the IRS contract. At trial in October 1998, the jury returned a verdict in Cross's favor. The trial judge, however, granted ASPI a judgment notwithstanding the verdict ("j.n.o.v.") and ordered a new trial. On appeal, the Maryland Court of Special Appeals reversed the j.n.o.v. but affirmed the grant of a new trial.[4] A second trial was

---

2. Apparently Slosman's final employment agreement provided that he would receive a 20%, as opposed to 25%, share of profits.

3. Slosman, however, was paid his promised share.

4. The appeals court reversed the j.n.o.v. on the grounds that the trial judge had improperly invaded the jury's province when he found insufficient evidence of a contract, questioned Cross's credibility, and found that Cross had

held at the end of 2000. On January 25, 2001, the jury again returned a verdict in Cross's favor. ASPI filed an appeal which, as this Opinion is written, is still pending.

During state court proceedings, Cross allegedly made a number of contradictory statements that gave ASPI serious concern. According to ASPI, in a March 1998 deposition prior to the first trial, Cross said he could not remember why he had failed to include the 3% commission in his profit calculations. Then, in an affidavit filed in connection with a motion in May 1998, he maintained that he could not have misled Slosman because Slosman testified that he knew of the 3% commission in 1995. Thereafter, at the first trial in October 1998, Cross testified that he had in fact concealed the commission from Slosman for ASPI's benefit, *i.e.* in order not to undermine ASPI's negotiations with Slosman or cause ASPI to mark-up its bid on the IRS contract. Then, at the second trial in December 2000, following the remand from the Court of Special Appeals, Cross reportedly testified for the first time that he had actually concealed the existence of the 3% commission from Slosman, not for ASPI's benefit but for his own. That testimony, in ASPI's view, signified that Cross had intended to defraud ASPI all along.

ASPI filed the present federal suit against Cross on May 3, 2001. In Count I, ASPI alleges that Cross fraudulently concealed his intention to claim the 3% commission so that ASPI would not insist on eliminating or reducing the commission or marking up its bid on the IRS contract. It seeks as damages the 3% it would have added to its bid had Cross's commission

been included in the underlying documents. In Count II, ASPI alleges that Cross fraudulently concealed his intention to claim the 3% commission, which should have been included as an expense to be deducted from revenues in calculating the gross margin against which Slosman's commission would be paid. As a result, ASPI was obligated to pay a higher commission to Slosman than would otherwise have been due. ASPI seeks to recover from Cross the additional commission it had to pay to Slosman. Counts III (indemnity) and IV (subrogration) are similarly based on Cross's allegedly fraudulent conduct vis-a-vis Slosman. In these counts, ASPI again seeks the additional commission it had to pay to Slosman. In Count V, ASPI seeks restitution of the additional commission it paid Slosman on the ground that "Cross has been unjustly enriched by retaining the full benefit of the fraudulent conduct towards Slosman."

## III.

The gist of Cross's Motion to Dismiss is that ASPI knew of Cross's alleged fraudulent conduct as of April 1997, more than 4 years prior to ASPI's filing of the present case. That would of course mean that the claims are barred under § 5–101 of the Courts and Judicial Proceedings Article of the Maryland Code.[5] In support of its argument, Cross *inter alia* cites excerpts from ASPI's Opposition to Cross's Motion for Partial Summary Judgment filed in the Montgomery County Circuit Court on March 30, 1998, more than 3 years prior to the commencement of the present litigation:

---

waived his claim. But the appeals court then went on to affirm the trial judge's decision to order a new trial based on the trial judge's opinion that the verdict was against the weight of the evidence and was excessive.

**5.** The limitations statute provides that suits alleging fraud must be brought within three years of the date the fraud was or should have been discovered. Md.Code Ann., [Cts. & Jud. Proc] § 5–101 (2000).

Third, Plaintiff's [Cross's] conduct constitutes a breach of his duty of loyalty, which precludes recovery under his alleged contract. Under Maryland law, an employee has an affirmative obligation to disclose to his employer relevant information relating to his employment. In the instant case, Plaintiff was the proposal manager for ASPI and **his failure to alert ASPI to the existence of his claim for a three percent commission constitutes a breach of his duty, if not outright fraud.**

(Emphasis added.)

\*　　\*　　\*　　\*　　\*　　\*

Furthermore, Plaintiff [Cross], as a representative of ASPI, induced David Slosman to enter into an employment agreement with ASPI based largely on the understanding that he would receive a bonus derived from the gross margin of the IRS contract. Had the three percent commission been included in Plaintiff's calculations, Mr. Slosman's bonus would have amounted to virtually nothing. **Under these circumstances, Plaintiff's conduct would constitute a fraud upon Mr. Slosman** . . .

(Emphasis added.)

\*　　\*　　\*　　\*　　\*　　\*

By footnote, ASPI added:

In essence, Plaintiff [Cross] is arguing that he should be permitted to profit from misconduct that exposed ASPI to a lawsuit from Mr. Slosman.

\*　　\*　　\*　　\*　　\*　　\*

Further, ASPI argued:

If Plaintiff [Cross] believed he was entitled to a three percent commission, his failure to make it evident in discussions . . . constitutes at best the withholding of important information and at worst a **criminal fraud against his employer.**

\*　　\*　　\*　　\*　　\*　　\*

[I]n addition to his **fraudulent concealment** of his three percent commission, Plaintiff [Cross] engaged in conduct which can only be construed as misleading . . .

\*　　\*　　\*　　\*　　\*　　\*

Accordingly, in this Court Cross argues that "when it suited ASPI's purposes, they had no problem whatsoever in alleging that Mr. Cross committed fraud. Yet, in this Court, when it suits it otherwise, it says (apparently with a straight face and without any sense of shame) that it was unaware of any basis of a fraud claim until October 1998 at the earliest."[6]

ASPI makes a number of arguments in opposition. The statute of limitations, it says, is fact-intensive and should not be decided on a Motion to Dismiss. ASPI, it argues, was not damaged until January 25, 2001, when judgment was entered against it in the second state trial. Accordingly, the statute of limitations did not begin to run until that time. Alternatively, because Cross did not admit his fraudulent intent until he testified at trial in December 2000, ASPI should not be charged with discovery of the fraud claims before that date. As a further alternative, the earliest date of discovery should be October 1998, the date of the first state trial, which would still place the present suit within the limitations period. Finally, ASPI argues that the policies underlying the statute of limitations militate against dismissal of the case and, furthermore, that the statute of limitations does not apply to ASPI's equitable claims.

---

**6.** Cross points out that the same counsel who authored the statements relative to Cross's fraudulent activity in ASPI's March 1998 state court pleadings are ASPI's co-counsel of record in the present federal proceeding.

The Court acknowledges the parties' arguments, but declines at this time to resolve them. Whatever merit they may have, the Court *sua sponte* finds an independent ground for deferring its involvement in this case.

### IV.

■ In the Court's view, this case meets the "exceptional circumstances test" for abstention first enunciated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

In *New Beckley Mining Corp. v. International Union, United Mine Workers of America,* the Court of Appeals for the Fourth Circuit summarized the law relative to abstention based on exceptional circumstances:

> A district court has a duty to adjudicate a controversy properly before it: "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236. The Court, however, has recognized that under exceptional circumstances a district court may abstain "for reasons of wise judicial administration." 424 U.S. at 817–18, 96 S.Ct. 1236. When a litigant urges abstention on the ground that concurrent federal and state suits present exceptional circumstances, the district court must first determine whether the state and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums. *LaDuke v. Burlington N. R.R.,* 879 F.2d 1556, 1559 (7th Cir.1989). Because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236, the existence of proceedings in state court does not by itself preclude parallel pro-

ceedings in federal court. 424 U.S. at 818, 96 S.Ct. 1236. The court must consider factors identified in *Colorado River* and *Moses H. Cone* to establish whether "exceptional circumstances" exist. The factors to be considered include the following: (a) the assumption by either court of jurisdiction over property; (b) the inconvenience of the federal forum; (c) the desire to avoid piecemeal litigation; (d) the order in which the courts obtained jurisdiction; and (e) the source of applicable law. [*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 15–16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)]; *Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236. The Supreme Court has cautioned that "the decision whether to dismiss a federal action because of parallel state court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of the jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927.

946 F.2d 1072, 1073–4 (4th Cir.1991).

Applying those considerations, the Court finds that exceptional circumstances justify its abstention in the present case. The proposed proceeding in this Court and the pending proceeding in the state court are unquestionably parallel. The parties are not merely substantially the same; they are identical. The issues are, at the very least, substantially the same. Cross has sought to recover his 3% commission in the state suit. In Count I of its Complaint before this Court, ASPI seeks to recoup that 3%, characterizing it as the amount it would have added to its IRS bid had it known of Cross's potential claim for the commission. Clearly, if Federal Rule of Civil Procedure 13(b) pertaining to com-

pulsory counter-claims were applicable under Maryland law, ASPI's present suit would be precluded. Fed.R.Civ.P. 13(b). Moreover, although Maryland does not have a compulsory counterclaim rule comparable to that of the federal courts, *Rowland v. Harrison,* 320 Md. 223, 233, 577 A.2d, 51, 56 (1990), if the issue of Cross's alleged fraud was actually litigated as a defense in any phase of the Maryland litigation, its present claim would just as certainly be precluded on the basis of *res judicata. Id.* at 235–36, 577 A.2d at 56–7. Similarly, to the extent that ASPI is proposing to nullify the Maryland judgment by recouping by way of restitution what it has been ordered to pay Cross, *res judicata* may again block the present suit. *Id.* at 226, 577 A.2d at 57.[7] The Court finds the issues in the present suit and those in the state suit sufficiently similar as to make the federal and state proceedings parallel.

Continuing with the *Colorado River and Moses H. Cone* factors, here, as in *Colorado River,* the first two factors—the state court's assumption of jurisdiction over a *res* and the state court's greater convenience—are inapplicable. *See Moses H. Cone,* 460 U.S. at 19, 103 S.Ct. 927. However, unlike *Colorado River* and *Moses H. Cone,* the "paramount" consideration—the avoidance of piecemeal litigation—is clearly a consideration. *Id.* Cross's claim for the 3% commission has been litigated in two trials in the Circuit Court for Montgomery County, has been through one appeal, and awaits resolution of a second appeal. Both trials have resulted in judgments in favor of Cross and, as this Opinion is written, a second appeal by ASPI is pending. Cross, meanwhile, holds a judgment for the full amount of his claim.

ASPI'S quest in the present suit is, in effect, to recapture that 3% commission. The present suit is thus not merely another piece of the litigation; it is essentially the same piece that the parties are contesting in the state proceedings.

Another factor under *Colorado River* and *Moses H. Cone* is the order in which the courts obtained state and federal jurisdiction. *See Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236. Again, the Maryland case has been pending since 1997, has proceeded through two trials, one appeal and a second appeal is pending. The present suit was filed in May 2001. In contrast to the situation in *Moses H. Cone,* the state suit in this instance is running well ahead of the federal suit. *See* 460 U.S. at 21–22, 103 S:Ct. 927. This factor militates strongly in favor of deferring to the state court proceeding.

A final factor under *Colorado River* and *Moses H. Cone* is the source of applicable law. *See Colorado River,* 424 U.S. at 820, 96 S.Ct. 1236. In *Moses H. Cone,* where federal abstention was deemed inappropriate, the action was governed by federal law, *i.e.* the Federal Arbitration Act's provisions pertaining to arbitraribility of the dispute, which "must always be a major consideration weighing against surrender." *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. 927. Here the applicable law is 100% state-based, *viz.* the law of fraud, indemnity or subrogation. This factor, too, points forcefully to abstention.

Although "abstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236, the fact is that a significant number of courts, in various circumstances, have found the strong presump-

---

7. The Court also notes that, to the extent that ASPI is claiming that Cross procured his judgment by fraud, it has the right under Maryland statute and rule to file a motion to revise the judgment at any time. *See* Md. Code Ann., [Cts. & Jud. Proc.] § 6–408; Md. Rule of Proc. 2–535(b) (2001).

tion in favor of the exercise of jurisdiction overcome. *See, e.g., Liberty Mutual Ins. Co. v. Foremost–McKesson, Inc.,* 751 F.2d 475 (1st Cir.1985); *see also Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356 (2d. Cir.1985); 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4247 (2d ed.1988) (citing cases). The present case falls clearly within that category of cases.

The Court finds "that the parallel state litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927.

■ An issue remains as to whether the case should be dismissed or stayed. While that issue was at one time unresolved, it is now clear under *Quackenbush v. Allstate* that, in a suit seeking only money damages, a federal court may invoke abstention principles only for the purposes of staying the action. It may not invoke abstention to dismiss it. 517 U.S. 706, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). The Court will therefore stay the action.

At such time as it appears that the Maryland state courts are unable to provide complete relief to ASPI (assuming ASPI is entitled to it), the case may be revived in this Court. For the time being, however, the Court will enter an order of indefinite stay of the proceedings in this Court. Further, given the uncertainty and the length of the stay, the Court will enter an order administratively closing the case. At such time as either party may have a basis for reviving the present suit consistent with this Opinion, either may do so by filing a motion with the Court, and the opposing party shall have an opportunity to file an appropriate response.

A separate Order will be entered implementing this decision.

## ORDER

Upon consideration of Defendant Cross's Motion to Dismiss and Plaintiff ASPI's opposition thereto, it is for the reasons set forth in the accompanying Opinion this ＿＿ day of November, 2001

ORDERED:

1) The Motion to Dismiss is DENIED without prejudice;

2) These proceedings are STAYED pending resolution of ongoing legal proceedings between the parties in the state courts of Maryland;

3) The Clerk of the Court shall ADMINISTRATIVELY CLOSE this case;

4) At such time as either party may have a basis for reviving the present suit consistent with the accompanying opinion, either may do so by filing a motion with the Court, and the opposing party shall have an opportunity to file an appropriate response.