In re Tracey F. **DRAZENOVICH,**
**Debtor.**

**Tracey F. Drazenovich, Plaintiff,**

v.

**Ford Motor Credit Co.,**
**et al., Defendants.**

**Bankruptcy No. 01–24155–DK.**
**Adversary No. 02–1022–DK.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

April 16, 2003.

---

Barbara I. Berschler, Esq., Rockville, MD, for Debtor.

Paul M. Finamore, Esq., Baltimore, MD, for Century Ford, Inc.

Michael J. Klima, Jr., Esq., Baltimore, MD, for Ford Motor Credit Co.

Cheryl E. Rose, Rockville, MD, trustee.

## ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S MOTION TO DISMISS

DUNCAN W. KEIR, Bankruptcy Judge.

For the reasons set forth in the following Memorandum Opinion, Defendant's Third Motion to Dismiss is denied as to counts 1, 2, 6, 7 and 8 of the Second Amended Complaint. As to Count 4 of the Second Amended Complaint, Defendant's Third Motion to Dismiss is granted and Count 4 is hereby dismissed.

### MEMORANDUM OPINION

This action arises from an adversary proceeding commenced by Tracey F. Draz-enovich (the "Plaintiff") against Ford Motor Credit Company and Century Ford, Inc. (collectively the "Defendant"). Plaintiff avers that on June 10, 1999, Plaintiff purchased a 1995 Ford Contour [1] (the "Vehicle") from Century Ford in Rockville, Maryland. At the time of Plaintiff's purchase, the Vehicle's odometer allegedly showed negligible miles but she was told that the Vehicle had approximately 33,000 miles. Upon purchase of the Vehicle, Plaintiff signed a Simple Interest Vehicle Retail Installment Contract with Century Ford (the "Contract"). Century Ford then assigned the Contract to Ford Motor Credit Company ("Ford").

Not long after the purchase, Plaintiff (due to a check engine light) took the Vehicle to Century Ford for repair. After subsequent trips to the dealer for repairs, Plaintiff brought the Vehicle to a private mechanic. The mechanic allegedly informed Plaintiff that the Vehicle had been driven more than 100,000 miles, that it had been involved in at least one accident, that there was rust on the undercarriage and excessive wear on the brakes. After several more trips to the mechanic, in the Spring of 2000, the Vehicle was returned to Ford.[2] Ford sold the Vehicle on August 1, 2000.

Following the sale, Ford sought to recover a deficiency of $8,974.04 from the Plaintiff. Plaintiff did not pay the deficiency, prompting Ford to file suit in the District Court for Montgomery County (the "State Action")[3] seeking to recover the deficiency balance. Plaintiff failed to file an answer, thus a default judgment was entered on August 7, 2001 in the

---

1. Vehicle Identification Number 3FALP66L8SM110928.

2. There is a dispute of fact as to the circumstances surrounding the return of the Vehicle. The Plaintiff states that she returned the Vehicle to Ford, while Ford asserts that it repossessed the Vehicle following Plaintiff's default under the Contract.

3. Case No. 8178–01.

principal amount of $8,974.04, plus prejudgment interest of $482.35, post-judgment interest at the legal rate, attorney fees of $1,346.10 and court costs (the "Default Judgment"). On September 1, 2001, Plaintiff filed a Motion to Vacate the Default Judgment but that motion was denied. Thereafter, Plaintiff filed a Motion for Reconsideration of the Motion to Vacate, the District Court set a hearing for December 12, 2001; however, that hearing was canceled due to the filing of the present bankruptcy case.

Following the Default Judgment, on November 6, 2001, Ford took steps to execute on that judgment through a Writ of Garnishment On Property Other Than Wages (the "Writ of Garnishment"). The Writ of Garnishment was served upon Plaintiff's bank, SunTrust Bank ("SunTrust"), on November 13, 2001; whereupon SunTrust froze Plaintiff's accounts. Plaintiff states that the action by SunTrust caused her to file the present chapter 7 bankruptcy on November 21, 2001 (the "Petition Date").

Subsequent to the Petition Date, Plaintiff filed the instant adversary proceeding on January 18, 2002, against Defendant. Plaintiff's first Complaint (the "First Complaint") alleged four counts: (1) violations of the federal odometer act [4] and the Maryland odometer act; [5] (2) violation of the Maryland Consumer Protection Act; [6] (3) violation of the automatic stay imposed by 11 U.S.C. § 362; [7] and (4) emotional distress claims. Ford filed Defendant Ford Motor Credit Company's Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter (the "First Motion to Dismiss"). In that motion, Ford asserted that this court lacks jurisdiction under 28 U.S.C. § 1334(c)(2) [8] because Plaintiff's claims were so closely related to the State Action that they should have been brought in that action. In response, Plaintiff filed Opposition to Motion to Dismiss Filed By Defendants Ford Motor Credit and Century Ford, in which Plaintiff argued that the Writ of Garnishment was an action against property of the bankruptcy estate under 28 U.S.C. § 1334(e), thus the court should retain jurisdiction and that Ford violated the automatic stay and impaired Plaintiff's exemptions, which are both core matters under 28 U.S.C. § 157(b). In the alternative, Plaintiff stated a violation of the federal odometer act constitutes a federal question under 28 U.S.C. § 1331 and should be heard in Federal Court. Plaintiff also filed a Motion for Leave to Amend Complaint so as to add a count regarding the impairment of her exemptions under Section 522(b)(2). On April 15, 2002, this court held a hearing on these motions. At that hearing, the court denied the First Motion to Dismiss and granted the Plaintiff's Motion for Leave to Amend Com-

**4.** 49 U.S.C. § 32701, *et seq.*

**5.** Md. Code. Ann., Trans. II § 22–415 (2002).

**6.** Md. Code Ann., Com. Law II § 13–101, *et seq.* (2002).

**7.** Hereinafter all code sections refer to the United States Bankruptcy Code unless otherwise noted.

**8.** The First Motion to Dismiss asserted that the court lacks jurisdiction over counts 1, 2, and 4 in the First Complaint. The section referred to states:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

plaint.[9]

Plaintiff filed an Amended Complaint which added claims for impairment of exemptions under Section 522(b)(2), breach of express and implied warranties, fraud, and breach of contract. Defendant responded with Defendant Ford Motor Credit Company's Motion to Dismiss Amended Complaint (the "Second Motion to Dismiss").[10] The Second Motion to Dismiss argued that while Maryland does not have a compulsory counterclaim rule, Maryland narrowed its application of the counterclaim rule so as to require Plaintiff to bring the odometer and consumer protection causes of action within the context of the original state court litigation.[11] Defendant argues that if Plaintiff successfully prosecuted all the claims alleged in this proceeding, except the violation of the automatic stay claim, the result would be to nullify the Default Judgment, which would violate the doctrine of res judicata. Plaintiff's Opposition to Ford Motor Credit Company's Motion to Dismiss Amended Complaint (the "Second Opposition") argues that *Rowland's* holding is not as narrow as Defendant asserts and that the holding in *Rowland* explicitly mandates that Plaintiff's claims would not be barred by res judicata.

Plaintiff filed a Second Bankruptcy Rule 7015(a) Motion for Leave to Amend Complaint, which was granted on July 24, 2002. A Second Amended Complaint was filed with this court.[12] The Second Amended Complaint listed the following counts:

1. Violations of Federal and Maryland odometer legislation;
2. Violation of the Maryland Consumer Protection Act;
3. Violation of the automatic stay imposed by Section 362;
4. Impairment of exemptions under Section 522(b)(2);
5. Avoidance of a preferential transfer;
6. Breach of express and implied warranties;
7. Fraud; and
8. Breach of contract.[13]

**9.** After the April 15, 2002 hearing, the court issued an order requiring the assigned Chapter 7 Trustee to file a statement concerning the Trustee's intentions in this case. The Trustee responded by stating her intention to join the Plaintiff in this case. The court entered this order in the bankruptcy case and the Trustee's response is included in that file. The Trustee sought and received approval to hire Plaintiff's counsel as Special Counsel to the Trustee for the purposes of the present adversary. Also, the Trustee filed a Line to Withdraw Trustee's No Asset Report.

**10.** Defendant Century Ford filed an Answer to Amended Complaint that essentially adopts the defenses raised in the Second Motion to Dismiss. The remainder of this Opinion will not discuss any opinion of this court regarding Defendant Century Ford because they have not filed any motions joining in those filed by Ford.

**11.** Defendant cites *Rowland v. Harrison*, 577 A.2d 51, 320 Md. 223 (1990), for the proposition that under Maryland's counterclaim rule,

Plaintiff was required to bring her claims in the State Action or face a bar imposed by the doctrine of res judicata. This decision will be examined later in this Opinion.

**12.** The changes in the Second Amended Complaint include:

1. adding the Chapter 7 Trustee as a plaintiff;
2. removing contract rescission as a remedy sought;
3. stating that Ford's garnishment of Plaintiff's bank accounts and wages occurred within ninety days of the Petition Date and constitutes an avoidable preference; and
4. removing the emotional distress claim.

**13.** The numbers in this list correspond to the counts as listed in the Second Amended Complaint. For the purposes of clarity and organization the remainder of this Opinion will refer to each count by the above number unless otherwise noted.

Again, Defendant filed Defendant Ford Motor Credit Company's Motion to Dismiss Second Amended Complaint (the "Third Motion to Dismiss") and Plaintiff filed Plaintiffs' Response to Defendant Ford Motor Credit's Motion to Dismiss Second Amended Complaint (the "Response"). These motions are currently before this court.

The Third Motion to Dismiss argues that this court does not possess subject matter jurisdiction over Counts 1, 2, 6, 7, and 8 (the "State Counts"); thus those counts should be dismissed. The motion goes on to argue that Count 4 should be dismissed because it fails to state a claim upon which relief may be granted.

■ Defendant argues that the State Counts are not within the jurisdiction of this court because they should have been asserted by Plaintiff during the State Action, thus, res judicata[14] prohibits this court from asserting jurisdiction over claims that should have already been litigated. Defendant bases this argument on the *Rowland* case. In that case, Ms. Rowland, the owner of a horse, brought a veterinary malpractice claim against Dr. Harrison after Dr. Harrison had previously obtained a judgment against Ms. Rowland for the value of his veterinary services. Dr. Harrison contended that Ms. Rowland's claims were barred by principles of res judicata and should have been asserted in Dr. Harrison's suit for value of services since the claims arose from the same facts and circumstances. Dr. Harrison asserted that the proper form of Ms. Rowland's malpractice claim would have been a counterclaim in Dr. Harrison's suit.

The Court of Appeals of Maryland did not find Dr. Harrison's argument persuasive. The court held that Maryland's counterclaim rule is not mandatory but is permissive, thus "a counterclaim need not be filed and does not therefore preclude a subsequent action on that claim . . . ." *Rowland,* 577 A.2d at 56, 320 Md. at 233. The *Rowland* court went on to write:

> we hold that where the same facts may be asserted as either a defense or a counterclaim, and the issued raised by the defense is not litigated and determined so as to be precluded by collateral estoppel, the defendant in the previous action is not barred by res judicata from subsequently maintaining an action on the counterclaim.

*Id.* at 57, 235–36, 577 A.2d 51 (footnote omitted).

■ The *Rowland* court cites to the RESTATEMENT (SECOND) OF JUDGMENTS, which provides that when a permissive counterclaim rule is in effect, res judicata applies when a defendant can raise a defense or counterclaim in an action but fails to do so and the relationship between "the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." *Id.* at 55, 232, 577 A.2d 51 (citing RESTATEMENT (SECOND) OF JUDGMENTS, § 22 (1982)). Defendant argues that successful prosecution by the Plaintiff of the State Counts would result in a rescission of the Contract, thus nullifying the Default Judgment because that judgment is predicated on the existence of a valid contract. If this court allows Plaintiff to proceed and possi-

---

14. Maryland has defined the doctrine of res judicata in the following terms:
a judgment between the same parties and their privies is a final bar to any other suit upon the *same cause of action,* and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters *which with propriety could have been litigated* in the first suit.
*Rowland,* 577 A.2d at 54, 320 Md. at 229 (emphasis in original, citations omitted).

bly succeed on the State Counts, this court would be granting Plaintiff a second chance to litigate what should have been done in the State Action—whether the contract should be rescinded, and in the process nullify the Default Judgment. Defendant notes that despite Plaintiff's withdrawal of her claim to rescind the contract, a finding of fraudulent misrepresentation of material fact would permit this court to void the Contract and permit rescission. *Vincent v. Palmer*, 19 A.2d 183, 188, 179 Md. 365, 373 (Md.1941). In the *Vincent* case, the Court of Appeals of Maryland stated that "if there has been well established breach of a contract, and the injury caused thereby is irreparable ... the injured party may invoke the aid of equity to obtain rescission." *Id.* Thus, if this court finds a breach of contract has occurred that finding would permit rescission of the contract by Plaintiff and nullification of the Default Judgment. *See* RESTATEMENT (SECOND) OF JUDGMENTS, § 22, *Illustration 9* (1982).

▮▮▮ Defendant is misguided in its invocation of the specter of rescission. A contract may be rescinded upon a finding of fraud in the inducement; however, as the *Vincent* court noted the "injured party *may* invoke the aid of equity to obtain a rescission." *Id.* at 188, 373, 19 A.2d 183 (emphasis added). Plaintiff affirmatively abandoned an action for rescission of the Contract; accordingly she cannot be granted that remedy. Consequently, a successful outcome for Plaintiff would not nullify the Default Judgment.

This court finds that the situation presented by these facts is analogous to the illustration given in the RESTATEMENT (SECOND) OF JUDGMENTS, § 22 (1982). Illustration 2 following Comment *b* states:

A, a physician, brings an action against B for the price of medical services rendered to B, B fails to plead and judg-

ment by default is given against him. B is not precluded from subsequently maintaining an action against A for malpractice relating to the services sued upon in the prior action. (B is precluded, however, from seeking restitution of any amount paid pursuant to the judgment. See Comment f.)

RESTATEMENT (SECOND) OF JUDGMENTS, § 22, *Comment b, Illustration 2* (1982).

The situation between Plaintiff and Defendant is almost identical since Defendant brought an action against Plaintiff for recovery of a deficiency and Plaintiff failed to answer, thus a default was entered. Plaintiff is not now precluded from suing Defendant for counts 1, 2, 6, 7, and 8 asserted in the Second Amended Complaint. Defendant's Third Motion to Dismiss, as to counts 1, 2, 6, 7, and 8 will be denied.

▮▮▮ As to Count 4, Defendant argues that this count should be dismissed because it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of the statement of the claim. *Chertkof v. Baltimore*, 497 F.Supp. 1252, 1258 (D.Md. 1980). The standard for a motion to dismiss is well known: a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Faulkner Advertising Assoc. v. Nissan Motor Corp.*, 905 F.2d 769, 771–72 (4th Cir.1990). Count 4 in its entirety states:

53. Plaintiff Drazeonvich re-alleges and incorporates by reference Paragraphs 1 through 52.

54. By refusing to release all of the funds held by Suntrust Bank, Ford Motor through its Attor-

neys has impaired exemptions that Ms. Drazenovich rightly has the right to assert.

WHEREFORE, Plaintiff Drazenovich demands judgment and relief for compensatory damages and attorney fees, and such other relief as this Court believes just.

(Sec.Am.Compl.¶¶ 53–54).

In the factual averments of the Second Amended Complaint, Plaintiff asserts that Defendant attached bank accounts and garnished wages of the Plaintiff before the filing of the bankruptcy case. Plaintiff further avers that Defendant has refused to release the attached accounts and wages despite Plaintiff's demands.[15]

■ Exemptions do not impair or destroy lien rights held by creditors. If property, such as a bank account or impounded wages, is burdened by lien(s) at the time of the filing of the bankruptcy, the debtor's interest in such property becomes property of the bankruptcy estate subject to such liens. Unless the liens are avoided by a specific bankruptcy code provision or an order of the bankruptcy court, the lien "rides through" the bankruptcy case and remains impressed upon the property after the conclusion of the case. *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *see also, Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991); *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

■ When the debtor asserts an allowed exemption for all of the estate's interest in liened property, the bankruptcy estate's interest in the property passes back to the debtor but still subject to the lien(s) (unless the lien(s) have been avoid as aforementioned). The selection by debtor of the property as exempt property does not by itself destroy liens.[16] This court, in *Massey v. Chrysler Financial Corp. (In re Massey)*, 210 B.R. 693 (Bankr. D.Md.1997) (Keir, J.), discussed the issue of a prepetition repossession of an automobile by a secured creditor. In *Massey*, the debtor made none of the required payments to Chrysler, thus Chrysler repossessed the automobile prepetition. This court held that Section 362(a)(3) serves to maintain the status quo between the parties and is intended to lock the parties into "the positions they maintained as of the date this bankruptcy case was commenced." *In re Massey*, 210 B.R. at 695. *See also, In re Young*, 193 B.R. 620 (Bankr.D.Dist.Col.1996).

Similarly, in this case, Defendant burdened Plaintiff's bank account with the prepetition Writ of Garnishment. The Writ of Garnishment created a lien on the SunTrust accounts, thus, limiting Plaintiff's prepetition interest in the accounts and consequently the bankruptcy estate's postpetition interest. The allowed exemption restored to Plaintiff the interests that had passed into the bankruptcy estate but the exemption did not enlarge those interests by extinguishing the liens. Until/unless the court orders the lien avoided or terminated,[17] Defendant has no legal duty

15. In a separate count (Count 3), Plaintiff also seeks recovery against Defendant for violation of the automatic stay based upon these asserted facts.

16. The debtor may seek to avoid liens upon exempt property by actions provided for in Section 522(f), (j) and (h). By separate count,

debtor seeks to avoid the liens as preferences. *See* 11 U.S.C. § 522(g) and 11 U.S.C. § 547.

17. No action has been commenced in the bankruptcy case to avoid the lien, other than Count 5 of the Second Amended Complaint, upon which judgment has yet to be determined. Section 522(f) does set forth a right to avoid a judgment lien to the extent that the

to voluntarily give the lien rights back to Plaintiff.

Accordingly, as to Count 4, the court concludes that there is no basis set forth in the Second Amended Complaint upon which the requested compensatory damages could be granted. As to this count (4), the Motion to Dismiss will be denied.

lien impairs exemptions, as defined in that section. To obtain that result, the debtor must file a motion to avoid lien in the bankruptcy case in accordance with Federal Rule of Bankruptcy Procedure 4003(d) and Local Rule 4003–2.