831 A.2d 12

Agnes MOORE

v.

NISSAN MOTOR ACCEPTANCE CORPORATION, et al.

No. 96, Sept. Term, 2002.

Court of Appeals of Maryland.

Aug. 27, 2003.

Robert Jay Feldman, Baltimore (Michael L. Frielich, Towson, on brief), for appellant.

Jeffrey J. Hines (Richard M. Barnes, Adam T. Sampson, on brief), Baltimore, for appellees.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, J.

The ultimate issue before us is whether the Circuit Court for Baltimore County erred in dismissing appellant's complaint on the ground that it was barred by *res judicata.* We shall conclude that it did and shall therefore reverse the judgment.

## BACKGROUND

In July, 1995, appellant Agnes Moore purchased a Nissan Altima and financed it through a retail installment contract that was assigned by the seller to appellee, Nissan Motor Acceptance Corporation (NMAC). Under the contract, Moore agreed to make 60 monthly payments of $353. The contract provided that the creditor's rights were subject to the applicable law of Maryland. In the Spring and summer of 1998, Moore fell behind in her monthly payments, and, in August of that year, NMAC repossessed the car.

Md.Code, § 12–1021(e) of the Commercial Law Article, requires a creditor, within five days after repossessing proper-

ty, to deliver personally or send by certified mail to the borrower written notice stating (1) the right of the borrower to redeem the property and the amount payable; (2) the rights of the borrower as to resale and his/her liability for a deficiency; and (3) the location where the property is stored and the address where payment may be made. Moore claimed that she never received that notice.

The car was sold for $5,200, leaving a deficiency (including cost of sale) of $4,628. NMAC filed suit against Moore in the District Court to collect that deficiency, plus interest and attorneys' fees. Moore defended on the ground that she never received the required notice. Section 12–1018(2) of the Commercial Law Article provides that, except for a bona fide error of computation, if a creditor violates "any provision of this subtitle," which would include § 12–1021, the creditor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan.

The issue at trial came down to whether the notice required by § 12–1021(e) had been sent. A financial services manager for NMAC testified that the notice was sent by certified mail, and he produced a document, referred to as a "receipt," purportedly establishing that fact. The document was not stamped by the post office, however, and apparently did not contain appellant's signature. There was some evidence that the document was prepared by NMAC and "scanned" before presentation to the post office, leading Moore to argue that the receipt did not establish that notice had actually been sent. The witness conceded that he did not personally mail the notice. As noted, Moore flatly denied ever having received the notice. The District Court, at least inferentially, concluded that the notice was sent, as it ruled that NMAC had complied with the requirements of the Commercial Code. It therefore entered judgment in favor of NMAC.

The Circuit Court for Baltimore County, on Moore's appeal, reversed the District Court judgment, holding that the unstamped receipt did not suffice to establish an actual mailing

of the notice. Noting that NMAC had not produced a return receipt containing Moore's signature, it concluded that NMAC had presented no evidence that the required notice was sent.

Eleven months later, Moore sued NMAC and its attorneys for $100,000 and $25,000, respectively. Count I, against NMAC, was based solely on its failure to give the statutory notice. The three counts against the lawyers alleged false and misleading misrepresentations. Moore eventually dismissed the lawyer-defendants and, in an amended complaint, reduced her claim for damages to $25,000. The allegations against NMAC were, at best, scant. Moore alleged that she was entitled to recover any loss sustained by reason of NMAC's failure to provide the required notice and that she "has sustained and will continue to sustain damages."

NMAC moved to dismiss the complaint on the ground of *res judicata*—that Moore's action rested entirely on whether NMAC had provided the requisite notice, which was decided in the earlier case and could not be relitigated. NMAC relied on *Singer v. Steven Kokes, Inc.,* 39 Md.App. 180, 384 A.2d 463 (1978) for that proposition. Moore responded that the case was controlled not by *Singer,* but by *Rowland v. Harrison,* 320 Md. 223, 577 A.2d 51 (1990). The court agreed with NMAC that *Singer* was controlling and dismissed the complaint. Moore appealed, and we granted *certiorari* prior to proceedings in the Court of Special Appeals in order to determine the extent to which the pronouncements made by the Court of Special Appeals in *Singer* remain applicable in light of *Rowland.* The issue, in a nutshell, is whether a party, who (1) is sued as a defendant, (2) successfully raises a particular defense that defeats all or part of the plaintiff's claim, but (3) does not file a counterclaim seeking affirmative relief based on that defense, may, in a subsequent action, sue as a plaintiff on the basis of that defense.

### DISCUSSION

*Singer* arose out of a construction dispute. The Singers had contracted with Kokes for the construction of a house. When

the house was completed, the Singers took possession but refused to release the final draw on the construction loan. Kokes filed a mechanic's lien and an action to enforce it. In defense of that action, the Singers alleged certain defects in the construction and Kokes's failure to complete the project on time. The court rejected the timeliness of completion defense but awarded a credit against the lien of $1,850 by reason of the construction defects asserted by the Singers. Thereafter, the Singers sued Kokes for negligence and breach of warranty based on 141 other defective items, of which they claimed they were unaware at the time of the mechanic's lien action. The Circuit Court granted summary judgment to Kokes based on *res judicata*, and the Court of Special Appeals affirmed.

The appellate court explained that the doctrine of *res judicata* embodied two branches—direct estoppel and collateral estoppel. Direct estoppel, it said, prevents the relitigation of all matters that were raised or that could have been raised in a prior action between the same parties on the same cause of action. Collateral estoppel, on the other hand, applies where the second suit is based on a different cause of action and serves to bar the relitigation of only those issues actually decided in the first action. One aspect of direct estoppel, the court concluded, was that "a party must raise all defenses he has to a cause of action and once that action is concluded he cannot use a defensive matter as a basis for relief in a subsequent action between the parties." *Singer*, 39 Md.App. at 182, 384 A.2d at 465. The court noted that, if a matter is "not in the nature of a defense but constitutes a counterclaim, the general rule is that the party is not required to assert the claim unless the subject matter is such an integral part of the issue being litigated that a judgment would necessarily negate the existence of facts essential to its maintenance." *Id.*, at 182–83, 384 A.2d at 465.

In the particular case, the court concluded that the two actions were not different but the same. The nature of the credit the Singers asserted in the mechanic's lien case "was based on the same breach of warranty that serves as the basis for the present litigation." *Id*, at 183, 384 A.2d at 466. The

court rejected, factually, the assertion that the Singers were unaware of the additional defects at the time of the mechanic's lien case, noting that they had resided in the house for over eleven months prior to the filing of that action.

*Rowland v. Harrison* arose from a dispute between a horse-owner and a veterinarian. In June, 1986, Rowland sent her horse to Harrison's farm to be boarded and treated for a vaginal infection. While at the farm, the horse contracted colic which, according to Rowland, Harrison failed to treat. After Rowland removed the horse, it collapsed from the effect of the disease and, as a result of Harrison's further failure to respond to calls for assistance, it had to be destroyed. Rowland refused to pay for the professional and boarding services performed by Harrison.

In September, 1987, Harrison sued Rowland in the District Court for the value of those services—$1,215. Rowland removed the case to the Circuit Court for a jury trial and defended on the ground of breach of contract in the care of the horse and professional malpractice. She also filed a separate action for malpractice and moved either to stay the debt case or to consolidate the two cases. Upon the denial of that motion, Rowland filed a counterclaim in the debt action, asserting the same claim embodied in her malpractice action. When the court denied her request for postponement or severance, based on her inability at the time to present her defense, she moved to dismiss the counterclaim without prejudice, which the court granted. On the limited evidence presented, the court, acting presumably upon a subsequent waiver of a jury trial, granted judgment on the debt to Harrison, noting that its decision was strictly on the debt and did not deal with whether there was any negligence on Harrison's part.

No appeal was taken from that judgment. Harrison then moved for summary judgment in the malpractice action on the grounds of both direct and collateral estoppel. The court granted the motion on the basis of direct estoppel, concluding that Rowland's failure to litigate the malpractice issue as a

defense or counterclaim precluded her from raising it in a separate action. In arriving at that conclusion, the trial court assumed that Maryland followed the "compulsory counterclaim" rule. We reversed.

We recognized that, although we had long followed the traditional rule that "a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit," *Rowland*, 320 Md. at 229, 577 A.2d at 54 (emphasis omitted), we had not previously addressed the effect of that principle on the filing of counterclaims. It was clear that the negligence issue had not, in fact, been litigated in the debt action, so the question was whether Rowland's failure to do so served as a bar to her raising it in her separate action.

We turned for guidance, and ultimately adopted, § 22 of the Restatement (Second) of Judgments (1982) and certain of the official Comments thereto. The basic principle enunciated in § 22 was, and remains, as follows:

"(1) Where the defendant *may* interpose a claim as a counterclaim but he fails to do so, he is *not* thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so *is* precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is *required* to be interposed by a compulsory counterclaim statute or rule of court, or

(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."

(Emphasis added).

We noted as well Comment *a* to the Restatement section, which explains the rationale of § 22(1): in the absence of a

compulsory counterclaim rule, "the defendant normally has the option of interposing a claim as a counterclaim or of bringing a separate action against the plaintiff" and "[t]he justification for the existence of such an option is that the defendant should not be required to assert his claim in the forum or the proceeding chosen by the plaintiff but should be allowed to bring suit at a time and place of his own selection."

Maryland's counterclaim rule, we held, was, by its plain terms, permissive rather than mandatory. In light of our adoption of § 22 of the Restatement (Second), therefore, it would be inappropriate to apply the normal bar of direct estoppel in such a manner as would effectively convert the permissive counterclaim rule into a mandatory one. That, really, was the heart of the decision.

We then addressed the statement in *Singer* that a party must raise all defenses he has to a cause of action, and, once that action is concluded, the party cannot use a defensive matter as a basis for relief in a subsequent action between the parties. Looking to Comments *b* and *c* to Restatement § 22, we concluded that, given our permissive counterclaim rule, "where the same facts may be asserted as either a defense or a counterclaim, and the issue raised by the defense is not litigated and determined so as to be precluded by collateral estoppel, the defendant in the previous action is not barred by res judicata from subsequently maintaining an action on the counterclaim." *Rowland,* at 235–36, 577 A.2d at 57.

Our analysis in *Rowland* concluded with the caveat in Comment *f* to § 22. Section 22(2)(b), as noted, precludes a subsequent counterclaim, even under a permissive counter-claim rule, if the relationship between the plaintiff's claim and the counterclaim is such that successful prosecution of the counterclaim would "nullify the initial judgment or would impair rights established in the initial judgment." Comment *f* explains, for that to occur, "it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that the facts

**566**

constituting a defense also form the basis of the counterclaim." Rather:

> "The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment ... or by depriving the plaintiff in the first action of property rights vested in him under the first judgment ..."

The circumstances in *Rowland* were different from those here in one principal respect: in *Rowland*, the defendant in the debt action withdrew the negligence issue, and it was therefore never litigated. Here, appellant *did* raise the statutory defense; it was litigated, and she prevailed. Comments *b* and *c* to § 22, which were particularly germane in *Rowland*, are not germane here. What is absolutely germane, however, is Comment *d*, and, by analogy, Illustration 6 to that Comment. Comment *d*, in relevant part, provides:

> "Where the same facts constitute a defense to the plaintiff's claim and a ground for counterclaim, and the defendant sets up these facts as a defense but not as a counterclaim, and after litigation of the defense judgment is given for the defendant, the defendant is not precluded by the rule of merger from maintaining a subsequent action against the plaintiff based upon these facts ... In the subsequent action, the rules of issue preclusion ... will apply to issues litigated and determined in the first action."

Illustration 6 to Comment *d* posits the example of an action by A against B for breach of contract. Judgment is rendered for B on the ground that the contract was obtained by fraud. B is not precluded from thereafter suing A for damages resulting from the fraud if the ground was asserted as a defense, but is precluded if it was asserted as a counterclaim for rescission. Except that the defense here was a statutory one rather than fraud, that is precisely this case.

■ *Singer*, itself, may be distinguishable in that the defendants there—the Singers—actually raised and litigated in the

mechanic's lien action the defense of set-off, although not for the entire amount they later claimed. That case really did present the prospect of an unjustified attempt to split a claim. Whether distinguishable or not, however, the fact is that, to the extent there is any tension between *Singer* and *Rowland,* the latter clearly prevails. It is our case and it is a later case. In *Rowland,* we expressly adopted the principles set forth in § 22 of the Restatement. Those principles control this case as well. Despite NMAC's argument to the contrary, it is clear that Moore did not assert any counterclaim in the debt action, but argued the failure of notice solely as a defense to NMAC's claim. She neither sought nor received any affirmative relief in that action, and she is not seeking to relitigate in this case the issue of whether NMAC failed to give the required notice. That has already been resolved in her favor. She is simply seeking damages based on that failure.

Penultimately, NMAC urges that, even if we apply § 22 as we propose to do, Moore's action is barred because its successful prosecution would nullify the judgment entered in the debt action. It fails to explain to us, however, and we are unable to imagine, how that result would occur. The judgment in the debt action was that, because of its failure to establish that the statutory notice was sent, NMAC was not entitled to collect anything more from petitioner. We fail to see how any judgment rendered in this action would nullify that result.

Shooting in desperation the final arrow in its quiver, NMAC complains that, quite apart from any issue of preclusion, Moore's action is barred by the statute of limitations. Section 12–1019 of the Commercial Law Article provides that "[a]n action for violation of this subtitle may not be brought more than 6 months after the loan is satisfied." NMAC avers that the loan was satisfied when the Circuit Court, in the debt action, rendered its judgment, and that this action was not filed within six months after the entry of that judgment. The simple answer to that argument is that it was not raised or decided below.

**568**

JUDGMENT OF CIRCUIT COURT FOR BALTIMORE
COUNTY REVERSED; COSTS TO BE PAID BY APPEL-
LEE.