Deborah L. **SHEAHY**

v.

**PRIMUS AUTOMOTIVE FINANCIAL SERVICES, INC., et al.**

**No. CIV. JFM–03–544.**

United States District Court,
D. Maryland.

Sept. 12, 2003.

Russell J. Pope, Pope and Hughes, PA, Towson, MD, for Deborah L. Sheahy.

P. Rivka Schochet, Thomas G. Parachini, Steven C. Kahn, Miller, Canfield, Paddock

and Stone, PLC, Detroit, MI, Edward J. Hutchins, Jr., Stacey Ann Moffet, Eccleston and Wolf, PC, Baltimore, MD, for Primus Automotive Financial Services, Inc., et al.

## OPINION

MOTZ, District Judge.

Deborah L. Sheahy, has filed a class action complaint against Primus Automotive Financial Services, Inc. ("Primus") and Thieblot, Ryan, Miller & Hrehorovich, P.A. ("TRMH") alleging that defendants failed to provide her proper notice following the voluntary repossession of her motor vehicle in violation of Md.Code Ann., Com. Law II § 12–1021, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), the Maryland Consumer Debt Collection Act, Md.Code Ann., Com. Law II § 14–201, et seq. ("MCDCA"), and the Maryland Unfair and Deceptive Trade Practices Act, Md.Code Ann., Com. Law II § 13–301 ("MDTPrA"). Defendants have filed motions to dismiss on the ground that Sheahy's claims are barred by res judicata.[1] For the reasons stated below, I will grant the motions.

### I.

In November 1997, Sheahy purchased a 1997 Nissan pick-up truck. At the time of the purchase, Sheahy entered into a Maryland Simple Interest Vehicle Retail Installment Contract (the "contract") with Nationwide Motor Sales Corporation in which she financed the principal amount of $14,827.75. The contract was assigned by its terms to Primus.

In early 1999, Sheahy's loan with Primus went into default. In the spring of 1999, Sheahy agreed to voluntary repossession of the vehicle. The surrendered vehicle was subsequently sold at a public auction and the proceeds were applied to the outstanding balance. A balance of more than $6000, however, remained outstanding and due to Primus. From March 2000 until approximately June 2000, Primus offered to compromise the outstanding balance in a series of letters to Sheahy. Primus and Sheahy eventually agreed that she would pay $200.00 a month until the balance was paid in full.[2]

According to Sheahy, in the summer of 2000, Primus retained TRMH to collect the debt due to Primus. On August 15, 2000, Sheahy executed a promissory note (the "Note"), agreeing to: (1) the repayment of the outstanding debt balance of $7,729.56 at the rate of $200.00 per month payable to TRMH; (2) accelerated payment of the entire balance due on failure to make such a payment; and (3) payment of court costs and post-judgment interest if litigation was required to enforce the Note. Sheahy further alleges that at or about the time the Note was presented to her, a TRMH representative told her that if she failed to sign the Note, TRMH would be "coming for her house." (Compl.¶ 12.)

Sheahy alleges that she complied with the terms of the Note for several months, but acknowledges that she defaulted on the Note in early 2002. On or about May 1, 2002, TRMH filed suit on behalf of Primus in the District Court for Baltimore County, Maryland, Case No. 16424–02. TRMH served interrogatories on Sheahy to which she never responded. TRMH then filed a motion to compel answers to interrogatories. Sheahy, acting pro se, responded to the motion by letter, in which

---

**1.** In their motions defendants raise additional defenses, the merits of which I need not decide in light of my res judicata ruling.

**2.** Sheahy does not indicate in her complaint whether she made any monthly payments of $200.00.

she stated that she did not receive the interrogatories. The District Court granted TRMH's motion. When interrogatories were still not received, TRMH filed a motion for judgment by default, which was also granted by the District Court.

According to Sheahy, after obtaining judgment, TRMH attempted to garnish her bank account. Sheahy also alleges that TRMH contacted "mortgage brokers/lenders" and informed them of the judgment without her consent. The "mortgage brokers/lenders" then contacted Sheahy and offered to refinance her home to provide a means to satisfy the outstanding judgment. At all times, Sheahy alleges, TRMH was acting as the authorized agent of Primus.

On February 27, 2003, Sheahy filed this suit. In her class action complaint, she sets forth four claims against both defendants. In Count I, Sheahy asserts that her failure to receive notices pursuant to Md.Code Ann., Com. Law II § 12–1021 ("section 12–1021") resulted in the forfeiture by Primus of the debt owed to it by Sheahy.

In Count II, Sheahy asserts that TRMH and Primus are "debt collectors" subject to the FDCPA. Sheahy further asserts defendants violated the FDCPA by attempting to collect an invalid debt and making an overt and false threat that Sheahy could lose her house, thereby coercing her into executing the Note.

In Count III, Sheahy alleges that defendants violated the MCDCA by improperly disclosing information to third parties without her consent and by threatening to enforce a right with the knowledge that such a right did not exist.

In Count IV, Sheahy asserts that defendants failed to render statutorily required notices and threatened to move against her house if she did not execute the Note in violation of the MDTPA. Overall, Sheahy seeks actual and statutory damages, as well as injunctive relief restraining Defendants from statutory violations in the future.

## II.

In *Colandrea v. Wilde Lake Cmty. Ass'n,* 361 Md. 371, 761 A.2d 899, 910 (2000), the Court of Appeals of Maryland described the doctrine of *res judicata* as follows:

> Under Maryland Law, the requirements of *res judicata* or claim preclusion are: 1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits. Therefore, a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, *but also as to matters that could have been litigated in the original suit. To avoid the vagaries of res judicata's preclusive effect, a party must assert all the legal theories he wishes to in his initial action, because failure to do so does not deprive the ensuing judgment of its effect as res judicata.* As can be seen, *res judicata* looks to the final judgment on the merits earlier entered in the same case *or same cause* and to the necessary legal consequences of that judgment.

(Emphasis in original).

In this case each of the three elements giving rise to *res judicata* are met.

First, there is no dispute that Primus and Sheahy were parties to the previous action in the District Court for Baltimore County. As to Sheahy's claims against TRMH, the Maryland Court of Special Appeals has specifically held that a law firm which is sued for the manner in which

it represented its client meets the "identity of party" requirement in circumstances like those presented here where the plaintiff previously litigated or could have litigated her present claim in an earlier case against the lawyer's client. *Green v. Ford Motor Credit Co.*, 152 Md.App. 32, 828 A.2d 821, 838–39 (2003). *See also Klein v. Whitehead*, 40 Md.App. 1, 389 A.2d 374, 384 (1978).

Second, the "transaction test" adopted by the Maryland courts to determine the identity of claims is quite broad. As stated in *Anyanwutaku v. Fleet Mortg. Grp., Inc.*, 85 F.Supp.2d 566, 571 (D.Md.2000) (citing *deLeon v. Slear*, 328 Md. 569, 616 A.2d 380, 389–90 (1992)):

> Under this test, claims are considered a part of the same cause of action when they arise out of the same transaction or series of transactions. In determining whether the causes of action stem from the same transaction or series of connected transactions, courts consider such pragmatic factors as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. Claims may also arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief.

*Id.* (internal quotations and citations omitted); *see also Colandrea*, 761 A.2d at 908 ("When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar … the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."); *Kent County Bd. of Educ. v. John R. Bilbrough, Jr.*, 309 Md. 487, 525

A.2d 232, 237 (1987) ("The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff.").

Here, both Sheahy's present suit and the earlier action filed by Primus against Sheahy relate to the deficiency owed to Primus following the voluntary repossession of her vehicle. The basis of the earlier suit was that Sheahy had defaulted on a promissory note she agreed to in her effort to repay Primus. In the present action, Sheahy's claims focus on whether that promissory note was valid and whether notice was provided to Sheahy following the voluntary repossession of her vehicle in compliance with section 12–1021. Under these circumstances, the "transaction test" is met.

■ Third, although the earlier suit filed by Primus against Sheahy in the Maryland District Court resulted in a default judgment, for *res judicata* purposes a default judgment is given the same effect as a judgment entered after a trial on the merits. *See Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319 (4th Cir.2002), *citing Morris v. Jones*, 329 U.S. 545, 550–51, 67 S.Ct. 451, 91 L.Ed. 488 (1947); 18 C.A. Wright, A.R. Miller & E.H. Cooper, *Federal Practice & Procedure* § 4442 at 373 (1981); 18 Moore's *Federal Practice* § 131.30[3][d] at 131–106 (3d ed.1997).

### III.

Sheahy next argues that even if the three elements of *res judicata* have been met here, the doctrine does not apply because under Maryland's permissive counterclaim rule she was not required to assert in the earlier action the claims she is asserting in this action. In a very recent case, *Moore v. Nissan Acceptance Corp.*, 376 Md. 558, 831 A.2d 12, 16 (2003) the

Maryland Court of Appeals confirmed its earlier holding in *Rowland v. Harrison,* 320 Md. 223, 577 A.2d 51 (1990), that this issue is to be resolved by reference to section 22 of the Restatement (Second) of Judgments.[3] That section reads as follows:

(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

The exception set forth in § 22(2)(b) of the Restatement is explained in comment (f), which states in relevant part:

*f. Special circumstances under which failure to interpose a counterclaim will operate as a bar.* Normally, in the absence of a compulsory counterclaim statute or rule of court, the defendant has a choice as to whether or not he will pursue his counterclaim in the action brought against him by the plaintiff.

There are occasions, however, when allowance of a subsequent action would so plainly operate to undermine the initial judgment that the principle of finality requires preclusion of such an action. This need is recognized in Subsection (2)(b). For such an occasion to arise, it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that *the facts constituting a defense also form the basis of the counterclaim. The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment* (see Illustration 9), or by depriving the plaintiff in the first action of property rights vested in him under the first judgment (see Illustration 10). Ordinarily the conclusion that the subsequent action could not be maintained under Subsection (2)(b) would not be reached unless the prior action had eventuated in a judgment for plaintiff since only in such a case would there be the threat of nullification of the judgment or of impairment of rights to which the Subsection is addressed.

■ As stated by the Maryland Court of Special Appeals in *Green,* the relevant inquiry to be made under section 22(2)(b) and comment b is whether the allegations in a new suit, "if proven to be true, would negate, contradict, and in that sense nullify

---

**3.** In *Moore* the court held that under the Restatement test the plaintiff could assert claims in a subsequent action that she had not asserted as counterclaims in an earlier debt collection action. However, in *Moore* the plaintiff had successfully asserted as a defense in the prior action nondelivery of the statuto- ry notice required for collection of the debt. Therefore, allegations she made in the second action did not contradict—but were consistent with—the rights established in the first action. In the instant case the default judgment resulted in an implicit ruling against plaintiff on the statutory notice question.

an essential foundation for the [earlier] District Court judgment." 828 A.2d at 830 (quoting *Fairfax Savings, F.S.B. v. Kris Jen Ltd.*, 338 Md. 1, 655 A.2d 1265, 1280 (1995)).[4] In the instant case Sheahy's own arguments demonstrate that the answer to this question is "yes." She repeatedly contends that the default judgment is void because notice was not provided in accordance with Maryland law. (*See, e.g.*, Pl.'s Opp'n to TRMH at 3), and each of her claims would negate, contradict, and nullify the default judgment.[5] Thus, because Sheahy could have raised her arguments regarding insufficient notice and coercion by the defendants in the state court action, she is barred under the doctrine of *res judicata* from making those arguments in this action.

A separate order is being entered herewith.

## ORDER

For the reasons stated in the accompanying opinion, it is, this 12th day of September 2003

## ORDERED

1. Defendants' motions to dismiss are granted; and

2. This action is dismissed.

---

**4.** *Green* did not involve the question of whether the plaintiff's claims had to be asserted as a counterclaim in the prior action but whether the judgment in the prior action was void on the basis of the allegations being made by the plaintiff in her newly filed action. The court's resolution of this issue against the plaintiff is dispositive of the same contention being made by Sheahy in the present case that the default judgment obtained against her by Primus in the Maryland District Court should not be given preclusive effect because it was void for lack of the requisite statutory notice.

**5.** In Count I, Sheahy argues that defendants violated section 12–1021 by failing to provide proper notice. Count I includes a request for actual damages—damages that would presumably include the full amount of the default judgment. (Compl.¶ 24.) Thus, while Sheahy does not explicitly seek an order voiding the District Court judgment in Count I, she implicitly seeks to void the default judgment by requesting the amount of the deficiency owed to Primus.

In Count II, Sheahy argues that defendants violated the FDCPA by failing to provide notice and by threatening to "com[e] for her house." Sheahy specifically alleges that "there was no longer a valid debt owed by the Plaintiff and all further representations and collection efforts concerning same were false, deceptive or misleading." (*Id.* ¶ 30.) Thus, under Sheahy's theory, defendants were not entitled to the default judgment because notice was defective. As in *Green*, "the issue of whether the requisite notice was given was never litigated. [Plaintiff], nevertheless, could have litigated that issue in District Court.... Under such circumstances, the doctrine of *res judicata* bars her from now claiming that [Defendants] gave defective notice." *Green*, 828 A.2d at 834.

In Count III, Sheahy alleges "any deficiency which followed the repossession and sale of the vehicle was extinguished by law. Accordingly, the Defendants further violated the [MCDCA] by continuing collection activity after the sale." (Compl.¶ 35.) In Count IV, Sheahy alleges "the aforegoing failure to render requisite notices and disclosures, and the threat to take away Sheahy's house if she did not execute the new promissory Note, individually and in the aggregate, constitute unfair and deceptive trade practices [in violation of the MDTPA]." (*Id.* ¶ 38.) Thus, these counts too are necessarily premised on allegations of insufficient notice.