File Name: 12a1174n.06
NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 12-3031

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

JGR, INC.

     Plaintiff-Appellant,

v.

THOMASVILLE FURNITURE INDUSTRIES, INC.

     Defendant-Appellee.

FILED

*Nov 13, 2012*

DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

_____ /

BEFORE:    MARTIN, and MOORE, Circuit Judges; WEBER, Senior District Judge.[*]

    BOYCE F. MARTIN, JR., Circuit Judge. Proving that three times is not always the charm, this contract dispute between JGR, Inc., which operated a furniture store, and Thomasville Furniture Industries, Inc., is before us for the fourth time. JGR appeals three rulings by the district court and asks us to vacate the district court's judgment, entered pursuant to a stipulation by the parties, that JGR will recover from Thomasville $472,000. For the reasons discussed below, we **AFFIRM** the judgment of the district court.

---

    [*] The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

I.

This Court has described the history of this dispute in three previous opinions. *See JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529 (6th Cir. 2008) ("*JGR III*"); *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519 (6th Cir. 2004) ("*JGR II*"); *Thomasville Furniture Indus., Inc. v. JGR, Inc.*, 3 F. App'x 467 (6th Cir. 2001) ("*JGR I*"). As we recounted in *JGR III*, 550 F.3d at 531 (citations omitted):

> Thomasville sued JGR in federal court in 1996 to collect payment for furniture and service charges. JGR filed a separate claim for breach of oral and written contract and fraudulent misrepresentation against Thomasville in Ohio state court, which Thomasville then removed to federal court. In 1999, the district court granted summary judgment in Thomasville's favor, ruling that the Ohio statute of frauds barred JGR's breach of oral contract claim and that its implied covenant of good faith claim also failed because it was based on the unenforceable oral contract. JGR appealed and, in 2001, this Court reversed and remanded for further consideration of the 'scope of the written terms of the 1992 Agreement.'
>
> At the 2002 trial, which followed the remand, a jury found that Thomasville had breached its 1992 written contract and awarded JGR zero lost profits and $1.5 million lost business value damages. . . . This Court affirmed the 'district court's judgment insofar as it reflect[ed] the jury's verdict as to liability,' but held that the district court abused its discretion by admitting lay opinion testimony and that the improper admission 'require[d] vacature of the jury's damages award and remand for a new trial solely on the issue of damages.

At the retrial on damages, the jury awarded JGR $3.3 million in lost profits and $3.53 million in lost opportunity costs. Thomasville appealed the verdict, asking us to decide—among other issues—whether the district court erred by allowing JGR to seek lost profits when JGR had failed to appeal the previous jury's verdict of zero lost profits. *Id.* at 530-31. We found that JGR's failure to appeal the zero lost profits award barred it from arguing for lost profit damages and vacated the jury award of lost profits. We also vacated the lost opportunity cost award because it depended

entirely on the jury's finding of lost profits. We remanded for "a new trial on damages for loss of business value." *Id.* at 533. In so remanding, we did not "rule on JGR's request for damages in the amount of interest on Thomasville's judgment against it." *Id.* at 533 n.1.

On the most recent remand, JGR's expert, Robert M. Greenwald, prepared a new report calculating the value JGR's business at the time of the contract breach. The damages calculation included the value of four stores that JGR planned to open at the time of the contract breach. Thomasville moved for summary judgment, disputing this valuation on various grounds. The district court denied summary judgment to Thomasville but ruled that "no evidence relating" to the third and fourth planned stores could be submitted to the jury. The district court also found that JGR should be able to submit a claim for damages in the amount of interest on Thomasville's 1999 judgment against it. Thomasville moved for reconsideration which the district court granted in part. As relevant here, the district court found that at trial, "[a]ll that plaintiff will be allowed to show, if it can, is what it likely lost in terms of dollars because it was not able to realize its anticipated second store. That and only that will constitute the lost 'return on investment' or 'opportunity costs.'" After this ruling, the district court set a trial date. Greenwald issued a supplemental damages report setting forth alternative loss calculations for two JGR stores after five years of operation, assuming that JGR never opened stores three and four.

Shortly thereafter, the district court vacated its finding that JGR should be able to submit a claim for damages in the amount of interest on Thomasville's 1999 judgment against it, finding that the issue was not properly before the district court on the limited remand focused on damages from loss of business value. JGR filed a motion for reconsideration which the district court referred to

the magistrate judge, along with three motions in limine filed by Thomasville, seeking to exclude (1) testimony by JGR's expert regarding his opinion on the "loss of value" estimate; (2) any evidence regarding the 1999 judgment obtained by Thomasville; and (3) any testimony about alleged pre-breach "wrongful conduct" or "interference" by Thomasville.

As to the three motions in limine, the magistrate judge recommended allowing the expert testimony generally but recommended exclusion of the alternative loss calculations by JGR's expert because they were based on the assumption that the stores would have doubled in size after five years of operation. The magistrate judge also recommended that the business value of the second store include the actual cost of opening a second store, rather than a cost based on the reinvestment of assumed and as-yet-unearned profits. The magistrate judge recommended the denial of Thomasville's second and third motions in limine. Regarding the motion for reconsideration, the magistrate judge recommended denying the motion on the grounds that allowing JGR to submit a claim for damages in the amount of interest on Thomasville's 1999 judgment against it would amount to "an impermissible collateral attack" on Thomasville's 1999 judgment "and/or is barred by principles of *res judicata*." The district court adopted these recommendations.

Following the ruling of the district court, the parties entered into a joint stipulation agreeing that JGR would be awarded damages in the amount of $471,880. The parties reached this agreement based on the cost of trial and the agreement that $471,880 was the most that JGR would be able to obtain given the district court's pretrial rulings. Based on the district court's rulings, JGR would be able to claim its expert's highest damage valuation, $324,000, for the value of the actual store, plus $148,000 for the value of the planned second store. By entering into the stipulation, both parties

agreed that neither waived objections to the rulings of the district court. JGR appeals the following rulings by the district court: (1) that JGR would be prohibited from submitting a claim for consequential damages in an amount equal to the pre- and post-judgment interest due on Thomasville's 1999 judgment; (2) that JGR would be prohibited from presenting evidence on the value of the third and fourth stores; (3) that JGR would be prohibited from presenting to the jury a loss of value calculation based on the assumption that JGR would have doubled the sizes of its first and second stores after five years of operation; and (4) that JGR, in presenting a value of the second store to the jury, must subtract the cost of opening the second store.

II.

A.      1999 Judgment

JGR argues that the district court erred in finding that JGR cannot recover damages in an amount equal to the interest it owes Thomasville on the 1999 judgment that Thomasville obtained against JGR in case No. 1:96-cv-1424. The district court entered the 1999 judgment pursuant to a stipulation between Thomasville and JGR. After the district court entered summary judgment on the question of JGR's liability for furniture delivered by Thomasville to JGR, the parties agreed on the amount JGR owed to Thomasville. JGR did not appeal either the district court's liability ruling or its entry of the stipulated judgment. On March 21, 2005, in this case the district court ruled that Thomasville was entitled to offset the 1999 Judgment against any damages awarded to JGR in the amount of $869,829.94 plus post-judgment interest. JGR now argues that it is due consequential damages in an amount equal to the interest JGR owes Thomasville on the 1999 judgment. JGR argues that but for Thomasville's 1992 breach of contract, JGR would have been in business and able

to pay its debts to Thomasville and thus would not have been required to pay any interest to Thomasville.

The district court found that JGR was barred from submitting this claim to a jury because any such claim amounts to "an impermissible collateral attack" on Thomasville's 1999 judgment "and/or is barred by principles of *res judicata*." We review legal questions, including the application of the collateral attack doctrine, de novo. *See Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). JGR argues that the district court wrongfully applied the doctrines of collateral attack and res judicata. Thomasville defends the judgment of the district court on the basis of the doctrines of collateral attack and res judicata, and, in the alternative, argues that the interest damages JGR seeks to obtain are not consequential damages because they were not damages proximately caused by the breach.

Even if we assume that there exist some instances in which an amount equal to the interest one party owes another on a previously entered judgment could be a consequential damage resulting from a contract breach interest, which is a proposition that we doubt, we find that allowing JGR to submit a claim for consequential damages in an amount equal to the interest JGR owes Thomasville would amount to an impermissible collateral attack on the 1999 judgment. The Ohio Supreme Court has defined a collateral attack as "an attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved." *Ohio Pyro, Inc. v. Ohio Dep't of Commerce*, 875 N.E.2d 550, 555 (Ohio 2007). "[C]ollateral or indirect attacks are disfavored and . . . they will succeed only in very limited situations." *Id.* Indeed, a collateral attack will only be permissible if the initial judgment was entered by a court lacking jurisdiction or an act

of fraud resulted in the entry of the judgment. *Id.* at 553. JGR agrees that the 1999 judgment is valid and asserts that it is not attempting to attack the judgment. Nonetheless, the success of JGR's argument hinges on allowing a jury to consider whether, but for Thomasville's breach, any judgment would have been entered at all. Moreover, if JGR were allowed to pursue its consequential damages claim, Thomasville would be deprived of a large part of the benefit of the 1999 judgment. We believe JGR's claim for consequential damages is actually a collateral attack on the 1999 judgment. JGR neither claims that the district court was without jurisdiction to enter the 1999 judgment nor that the judgment was the product of fraud, thus it is an impermissible attack on the 1999 judgment. *See id.*; *Saud v. Bank of New York*, 929 F.2d 916 (2d Cir. 1991) (precluding plaintiff from raising an affirmative RICO claim to recover treble the amount of a default judgment entered against him in prior action); *Henry v. Farmer City Bank*, 808 F.2d 1228, 1235-36 (7th Cir. 1986) (barring RICO claims brought in later action after foreclosure and deficiency judgment; "if the [plaintiffs] were to recover the damages they seek, the deficiency judgments awarded Farmer City State Bank would be rendered meaningless"); *Sheahy v. Primus Auto. Fin. Servs., Inc.*, 284 F. Supp. 2d 278, 283 n.5 (D. Md. 2003) (finding that plaintiff improperly "implicitly seeks to void the [previously entered] default judgment" by raising in a subsequent action affirmative claims for "damages that would presumably include the full amount of the default judgment").

JGR argues that the collateral attack doctrine does not apply in this case because JGR's consequential damages claim to recover interest it owes to Thomasville was brought in the same court that entered the 1999 judgment. This argument is based on a faulty legal premise: collateral attacks on a judgment need not involve separate or subsequent courts. *See, e.g.*, *Black & White*

*Children of the Pontiac Sch. Sys. v. Sch. Dist. of City of Pontiac*, 464 F.2d 1030, 1030-31 (6th Cir. 1972) (applying collateral attack doctrine to bar a complaint because it was filed as "an attempt collaterally to attack" an order entered in "the principal case" handled by the same judge) (per curiam).

JGR also argues that its claim for damages based on the amount it owes in interest is not a collateral attack because it is not "actually an attack on the *integrity* of the judgment," nor does it render the underlying judgment "ineffective" as required by the Ohio Supreme Court's definition of collateral attack in *Office Pyro*, 875 N.E.2d at 555. However, as JGR acknowledged before the district court, consideration of the claim of interest damages requires a jury to find "*whether any judgment would have been taken*—and therefore whether any pre-judgment or post-judgment interest would have been assessed against JGR—had there been no breach of contract by Thomasville." Thus, though JGR requests only submission of the interest on the judgment be submitted to the jury, the logic used by JGR would allow reconsideration of the entire judgment. Moreover, the purpose of awarding interest is to compensate a party—in this case Thomasville—"for the lapse of time between the accrual of the claim and judgment," and then for the lapse in time until the payment of judgment. *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 652 N.E.2d 687, 692 (Ohio 1995). An award of the amount of the interest on the 1999 judgment as damages would undermine the judgment award entered in 1999.

Because we conclude that JGR's effort to obtain damages in an amount equal to the interest it owes Thomasville on the 1999 judgment is a collateral attack on that judgment, we need not consider the parties' arguments relating to the application of *res judicata* or the propriety of framing the request for awards in the amount of interest JGR owes to Thomasville based on the 1999

judgment as a request for consequential damages. We affirm the district court's denial of JGR's motion to reconsider the district court's previous ruling that JGR would not be allowed to submit claims for the amount of interest it owes to Thomasville on the 1999 judgment.

B.      Evidentiary Rulings

JGR also appeals the district court's rulings on three evidentiary issues. First, JGR appeals the district court's ruling disallowing JGR from presenting evidence on the value of two planned stores that would have been the third and fourth JGR stores. Second, JGR appeals the district court's ruling to deny JGR the opportunity to present to the jury its alternative loss of value calculation based on the assumption that JGR would have doubled the sizes of its first and second stores after five years of operation. Third, JGR appeals the district court's ruling that JGR, in presenting a value of a planned second store to the jury, must also subtract the cost of opening the second store. We review the district court's evidentiary rulings for abuse of discretion. *See Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 378 (6th Cir. 2008). "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Jones v. Ill. Cent. R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010). There was no abuse.

We begin by assessing the district court's decision to exclude JGR's valuation of two planned, unopened, stores that would have been the third and fourth JGR stores. At the time of the contract breach, JGR had one open store and there is evidence that it had begun negotiations on a lease for a second store. Prior to the last trial, the district court ruled that JGR could not submit testimony by its expert regarding damages for lost profits or lost opportunity costs resulting from the

planned third and fourth stores because "[t]he third and fourth stores were never more than amorphous plans on the part of JGR, without even the lease negotiations JGR entered into regarding a possible second store at some location on the west side of Cleveland." The district court concluded that "any testimony or evidence, to the extent they discussed lost profits from planned third or fourth stores," would be excluded. After the trial, JGR did not appeal this ruling. The district court concluded that JGR's failure to appeal this issue meant that the previous district court holding had become "law of the case" that could not be reconsidered. "A party that fails to appeal an issue 'waive[s] his right to raise the[] issue[] before the district court on remand or before this court on appeal after remand. The law-of-the-case doctrine bars challenges to a decision made at a previous stage of litigation which could have been challenged in a prior appeal, but were not.'" *JGR III*, 550 F.3d at 532 (citation omitted).

JGR argues that the law-of-the-case doctrine does not apply here because the district court's initial ruling applied to the use of evidence regarding stores three and four as evidence of "loss of profits." In contrast, JGR hoped to use the evidence in the third trial as evidence of loss of business value. JGR argues that loss of value damages are less speculative than loss of profit damages and therefore subject to different, more lenient evidentiary rules. *See Schonfeld v. Hilliard*, 218 F.3d 164, 175-76 (2d Cir. 2000) (comparing "market value of an income-producing asset" with lost profits and finding that market value is "inherently less speculative than lost profits" so "it is appropriate to apply . . . proof requirements more leniently [to market loss damages] than [to] proof of lost profits"). Thus, according to JGR, the district court's ruling on the admissibility of evidence of planned stores three and four to "loss of profit" cannot be applied to the use of the stores as

evidence of loss of business value. The district court, however, did not base its previous ruling barring the admission of evidence regarding stores three and four on the speculative nature of the damages calculation but rather on the speculative nature of the existence of Stores #3 and #4. "[C]onsequential damages for breach of contract . . . have long been subject to the rule of law that a plaintiff is only entitled to recover such damages as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract." *Ed Stinn Chevrolet, Inc. v. Nat'l City Bank*, 503 N.E.2d 524, 536 (Ohio 1986). Given the district court's previous finding that Stores #3 and #4 were not "sufficiently within the contemplation of the parties at the time of the contract's formation," and JGR's failure to appeal this ruling, we find that the district court did not abuse its discretion in accepting this finding that the evidence on the value of the third and fourth stores could not be submitted to the jury.

Greenwald's supplemental damages report claimed "that if [JGR's principal] had been unable, for any reason, to proceed with Stores #3 and #4 as originally planned, he would have expanded the size of both Store #1 and Store #2" after five years of operation. The district court held that the basis for its original ruling disallowing evidence regarding Stores #3 and #4 – that evidence regarding a plan to open a third and fourth store is too speculative – applies equally to the projected expansion of Stores #1 and #2, which would have been entirely contingent on the outcome of the already speculative plans for Stores #3 and #4. JGR mentioned plans to double the sizes of Stores #1 and #2 for the first time in April 2011, after more than a decade of litigation and only after the district court disallowed evidence regarding Stores #3 and #4. Moreover, the district court correctly distinguished the cases relied upon by JGR for support. Under the standards set forth in

both *Bd. of Cnty. Comm'rs of Hamilton Cnty. v. Flanco Realty Co.*, No. C-980781, 1999 WL 420156 (Ohio Ct. App. June 25, 1999) and *Heatranfer Corp. v. Volkswagenwerk, A.G.*, 553 F.2d 964 (5th Cir. 1988), the expansion of Stores #1 and #2 is highly speculative.

We find that the district court did not abuse its discretion in accepting the magistrate judge's recommendation that JGR could not obviate its ruling disallowing evidence regarding Stores #3 and #4 by presenting to the jury a loss of value calculation based on the assumption that JGR would have doubled the sizes of its first and second store after five years of operation.

Greenwald stated that the cost of opening JGR's second store would have been $225,000, but that a new buyer determining the value of JGR's business at the time of the breach would have determined that the cost of opening a new store was $58,000 because approximately $167,000 of the cost would have been offset by the projected profits of Store #1. Thus, in determining the value of Store #2, Greenwald's report subtracts $58,000 from its total value. Relying on this Court's decision to preclude recovery for "lost profits" or "lost opportunity costs" due to JGR's failure to appeal the issue, the district court accepted the magistrate judge's recommendation that it would be consistent with the law of the case to prohibit JGR's expert from taking into consideration the projected profits of Store #1 in determining the value of Store #2; therefore, the district court held that Greenwald must subtract the entire cost of a new store, $225,000, from his valuation of Store #2. In addition, JGR's expert admitted that at the time of the breach, a buyer would have needed $225,000 to open Store #2 because there were no funds available from Store #1. Thomasville's breach was not the cause Store #1's lack of profits at the time of the breach. We find that the district court did not abuse its discretion in ruling that, in

determining the value of Store #2, JGR must subtract the actual cost of opening the second store.

Judgment AFFIRMED.